ELLIS, Judge.
■ Plaintiff has filed this, suit for. workmen’s compensation benefits as a result of injuries received on April 19th .while employed as a caterpillar tractor operator by his brother Joseph Kline,'who was engaged in the logging business.
Plaintiff is seeking to hold liable the C. W. Dawson Lumber. Company and the individual members of this partnership as the principal contractor of his brother, Joseph Kline, together with the insurer *77 of this partnership. There were quite a number of pleadings filed in the case due to plaintiff’s inability to name and cite the proper partners in his first petition. The defendant has filed exceptions based upon a contention that the partnership has never jet been sued and, therefore, the individual members cannot be held liable to judgment.
Because of the fact that we believe the judgment of the lower court should he amended so as to render same on the merits instead of on the exception and as thus amended, affirmed, it is unnecessary to go into the multiplicity of pleadings •or exceptions filed thereto.
It was plaintiff’s contention that Joseph Kline was employed by the C. W. Dawson Dumber Company to haul timber which it had purchased from one Negocia, and that when the plaintiff was injured during the course and scope of his employment while working for his brother, Joseph Kline, the lumber company became liable to him as “principal” under LSA — R.S. 23:1061. The defendant denied' having employed Joseph Kline and denied that the timber which he was hauling had been bought by it or was owned by it and, on the contrary, alleged that Joseph Kline had been employed by Negocia to haul logs which the latter owned and cut from a tract of timber he had purchased, and that the Lumber Company was buying the logs delivered at their mill at a price of $30 per thousand for hardwood and $40 per thousand for cypress, with the understanding that they were to withhold $12 stumpage for hardwood and $13 stumpage for the cypress logs, plus $5 per thousand for cutting the logs for Negocia, the purchaser of the tract of timber and the owner of the logs, and to pay the difference to Joseph Kline who had been employed by Negocia to haul the logs .to the Dawson Lumber Company mill. .
The main question in the case is one- of fact as to whether there was any employer-employee relationship between plaintiff and Dawson Lumber Company, or- whether, as contended by the defendants, there was only a relationship of vendor or vendee or buyer and seller.
At the end of the trial defendants re-urged and refiled their exception of no right of action and the learned Judge of the lower court, being of the opinion that the case was governed by Smith v. Crossett Lumber Co., La.App., 72 So.2d 895, and that there was a relationship of buyer and seller only in the present case, sustained the exceptions of no right of action and dismissed plaintiff’s suit, and it is from this judgment that plaintiff has appealed.
It is shown that a party by the name of Negocia purchased a tract of timber and that he sold some of it to the Dawson Lumber Company and some to one Brunt and one Joe Major. Negocia testified that prior to his purchase of the tract of timber from one Guerin, he was interested- in obtaining a purchaser and that he saw Jack or John Kline, who was engaged in the log hauling business and who was a brother of Joseph Kline, plaintiff’s -immediate employer. It appears that Kline was unable to buy the timber or logs from Negocia but got in touch with the Dawson Lumber Company who told John Kline that they would purchase the logs delivered at their mill for $30 per thousand for hardwbod and $40 per thousand for Cypress. John Kline' then ’told Negocia that they would'pay him $12 a thousand plus $5 per thousand for cutting the logs. John Kline testified that Negocia then asked him who he could get to haul the logs and Kline told him that he couldn’t do it as he was ‘engaged at that time, and John Kline testified he saw his brother, Joseph Kline, and told him that Negocia had this timber for which he was to receive from the Dawson Lumber Company the agreed price and which would leave him $12 and $13 a thousand for the hauling. In other words, under Kline’s testimony there was nothing more nor less than a relationship of buyer and seller. Negocia first stated that he had never hired Joseph Kline to haul- the timber, however,, he-admitted later in his .testimony that Dawson Lumber-- Company did not buy the., tract of- standing timber at all and had only *78 agreed to buy the logs for so much stump-age plus the cutting cost.
Joseph Kline’s testimony is not too impressive and evidently did not impress the trial judge as he depended principally upon ,the testimony of John Kline in arriving at his decision. Robert C. Dawson, Sr., member of the Dawson Lumber Company partnership, testified that John Kline had called him with regard to the Negocia timber and that he told him he would be interested in buying the logs delivered to the mill at a given price of $30 for the hardwood and $40 for the cypress but that they would hold out $12 stumpage and $5 for cutting,'or $17, for Mr. Negocia when they paid Joseph Kline for the logs. The difference, of course, would belong to Kline whom the testimony shows was employed by Negocia and not the Dawson Lumber Company. John Kline’s testimony w.hen considered in the light of the other testimony in the record is convincing that Negocia knew he was to pay for the hauling or to hire the logs hauled to Dawson’s mill. For example, John Kline testified that Negocia asked “me to haul it but I couldn’t.” He-further testified that he and Negocia had -a discussion about who was to haul the logs and the latter asked him if he would find somebody to haul them, and John told him that he would see his •brother, Joseph Kline, which he .did. Joseph Kline practically admits the truthfulness of John’s testimony that the latter saw him and told'him of the Negocia deal and that he wanted somebody to haul the logs and told him the price,. and Joseph Kline did' see -Negocia."
In addition to the facts above discussed the record shows that premiums for compensation insurance was deducted from the check given Joseph Kline for delivering the l'ogs. Plaintiff places great stress upon this fact, ho-wever, being- of the opinion that the facts heretofore discussed reveal a buyer-seller rather than an employet-employee relationship and no Compensation, therefore, being due, it is well' settled that such an erroneous deduction' of k premium for compensation insurance has no binding effect and should be- returned and such a tender was made in the present case. See Franz v. Sun Indemnity Co. of New York, La.App., 7 So.2d 636.
We therefore find the judgment of the District Court to be manifestly correct except that counsel for defendant in answering the appeal asked that the judgment be amended so as to render judgment on the merits rather than on the exception of no right of action, and in the alternative that it be affirmed as rendered. The basis of the defendant’s answer and request for a decision on the merits is contained in the case of Bartholomew v. Impastato, La.App., 12 So.2d 700, which held in effect that motions for judgment, directed verdicts and demurrers to evidence being a procedural pleading of the common law and unknown in • our system may not be invoked in Louisiana by disguising them with the label exception of no right or cause of action, and if the defendant doubted the sufficiency of the evidence presented by the plaintiff to sustain his demand and does not 'see fit to contradict the evidence which has been submitted, he unquestionably.-has the right to have the court determine- the sufficiency of plaintiff's 'evidence by resting his case and in such instances a judgment should be rendered on the merits in favor of one side or the other. . We agree with .this principle of law.
It is therefore ordered that the plaintiff’s suit be dismissed at. his cost and the judgment of the District Court as amended be affirmed.