FRUGÉ, Judge.
This is a suit for workmen’s compensation by plaintiff against Foster Forest Products, Inc. and its compensation insurer, Southern Pulpwood Insurance Co. arising out of an alleged injury sustained on or about September 14, 1960. The trial court rendered judgment in favor of defendants, dismissing plaintiff’s suit, and he has appealed to this court.
There are three principal issues presented by this appeal. First, what was the relationship between plaintiff and Foster Forest Products, Inc., i. e., was it a relationship of principal and contractor, employer and employee, or buyer and seller? Second, did plaintiff receive injuries within the meaning of the workmen’s compensation act? Third, what is the extent of plaintiff’s disability?
The trial court in dismissing plaintiff’s suit resolved the first issue by finding that a vendor-vendee relationship existed between plaintiff and Foster Forest Products, Inc. It therefore had no occasion to consider the other issues. Accordingly, we may also abstain from ruling on the remaining issues if we reach the same conclusion as the trial court.
The record discloses that defendant, Foster Forest Products, Inc., is a pulpwood producer and broker. At times it uses its own crew to cut pulpwood on tracts that it owns, or on tracts of land where it has purchased timber. However, it also purchases pulpwood from individuals at a set price per cord delivered to its mill.
The trial judge, in his written reasons, succinctly set forth his appreciation of the facts surrounding the relationship between plaintiff and Foster Forest Products, Inc. as follows:
“The evidence discloses that some time prior to the time plaintiff sustain *159 ed his alleged injury he had been producing pulpwood together with his brother-in-law, Grady Williams. It seems that Grady Williams was himself a pulpwood producer. He sold his pulpwood truck to the plaintiff under an arrangment by which Williams was to continue to work with plaintiff and help produce pulpwood until such time as plaintiff could pay Williams for the truck out of plaintiff’s earnings made in such operation. Thereafter they worked closely together. In fact it appears that Williams purchased timber which plaintiff and Williams converted into pulpwood and sold. The plaintiff hired such helpers as he desired and paid them such wages as he agreed upon with his help. Foster Forest Products, Inc. did not in any way supervise his operations or exercise any control whatever over the work performed by him. Plaintiff used his own equipment and worked at his volition.
“The plaintiff contends that he sustained the injury which forms the basis of this suit while working the timber from the F. E. Cole tract of land, tie states that Mr. George W. Foster, president of the defendant corporation, took him out to the Cole tract of land and showed him the timber and showed him what to cut. Thereafter, he and Grady Williams with his workers went to the Cole property and began cutting the timber. Mr. Cole found them cutting the timber and stopped them. However, plaintiff was not present at that time; and Mr. Cole and Grady Williams reached an agreement and they proceeded to cut timber for possibly two weeks under that arrangement until plaintiff sustained his injury. The pulpwood cut under this arrangement was delivered to the yard of Foster Forest Products, Inc. The stump-age value of the timber was paid directly to Mrs. Cole by checks of the Foster Forest Products, Inc. and the remainder of the purchase price of the wood was paid to plaintiff who .then paid his helpers.” (Tr. 309).
Upon further examination of the record, we note that Mr. Cole was certain that he never entered into a buy and sell agreement with Foster. Indeed, the evidence adduced at the trial of this case convinces us that title to the timber cut by Grady Williams and plaintiff did not vest in Foster until it was delivered to his mill. Further support for this conclusion is established by the fact that all of the timber cut by Grady Williams and plaintiff was not removed and delivered to Foster Forest Products, Inc.; nor was Foster Forest Products, Inc. required to pay for the timber cut but not picked up and hauled away. Certainly, if Mr. Cole and Foster had entered into an agreement whereby the latter was to pay for all timber cut on a stumpage basis, demand would have been made for such payment. Therefore, in our opinion, the timber was being cut and removed at the time of plaintiff’s injury under an agreement entered into by , Mr. Cole and Grady Williams. Accordingly, we find no manifest error in the trial judge’s determination that the relationship between plaintiff and Foster was that of vendor-vendee and not principal-contractor, or employer-employee.
 It is well established, under the jurisprudence of this state, that a purchaser of pulpwood is not liable for compensation benefits for accidental injuries sustained by the employees of the seller. Smith v. Crosset Lumber Company, La.App., 72 So.2d 895; Grant v. Consolidated Underwriters, La.App., 33 So.2d 575; Reed v. J. W. Jeffries Lumber Company, La.App., 9 So.2d 87. This rule also applies, as in the case at bar, where the buyer withholds stumpage from money due the intermediary. Cerie v. Malone, La.App., 125 So.2d 254; Smith v. Crossett Lumber Company, supra; Taylor v. Employers Mut. Liability Ins. Co., 220 La. 995, 58 So.2d 206.
*160 We are cognizant that in several recent decisions our courts have deviated from the rule set forth above. Jones v. Hennessy, 232 La. 786, 95 So.2d 312; Stevens v. Mitchell, 234 La. 977, 102 So.2d 237; Hatten v. Olin Mathieson Chemical Corporation, La.App., 112 So.2d 135. However, we note that in all of these decisions the facts indicated that buyer had exercised an unusual degree of control over the intermediary.
Thus, in Jones v. Hennessy, supra, the court held that the intermediary was not a seller within the meaning of LSA-R.S. 23 :- 1061, where the intermediary as part of the terms of an agreement to purchase a sawmill, had obligated himself to sell timber exclusively to the defendant from whom compensation was sought.
The Stevens case, supra, is distinguishable in that the alleged defendant exercised complete control over the intermediary, to the extent that the latter was required to deliver logs exclusively to defendant lumber company. Furthermore, the court found that all arrangements entered into by the intermediary had to meet with the approval of the defendant.
In the case at bar, the facts, as established by the trial judge, and accepted by this court, do not indicate that the defendant Foster exercised any control over the operations of Grady Williams and plaintiff. Accordingly, we are of the opinion that, under the jurisprudence of this state, plaintiff is not entitled to workmen’s compensation.
Counsel for plaintiff further contends that, notwithstanding that this court should find that the relationship of principal-contractor does not exist, the defendants are estopped to deny liability. In support of this contention he cites Carpenter v. Madden, La.App., 90 So.2d 508, and Stevens v. Mitchell, 234 La. 977, 102 So.2d 237.
An examination of these decisions convinces us that they have no application to the case at bar. In both the Carpenter and Stevens cases, supra, the defendant purchaser had agreed and obligated himself to obtain compensation insurance for the employees of the seller and collected money from the seller purportedly to pay for compensation insurance. The rationale of these decisions is based upon a quasi-contract predicated on the detrimental reliance of the vendor. See Hano v. Kinchen, La.App., 122 So.2d 889. In the instant case, there is no evidence that insurance premiums were deducted from the amount paid Grady Williams and plaintiff. Furthermore, the record does not indicate that Foster ever informed Grady Williams and plaintiff that he was procuring compensation insurance for them. Accordingly, we find no merit to the plea of estoppel.
Inasmuch as we have determined that plaintiff is not entitled to workmen’s compensation under LSA-R.S. 23 :1061 we need not consider the question of the degree of plaintiff’s disability.
For the reasons herein assigned, the judgment of the trial court dismissing plaintiff’s suit is affirmed; plaintiff to pay all costs of this appeal.
Affirmed.