AYRES, Judge.
This is an action to recover workmen’s compensation because of disability resulting from a hernia allegedly sustained by plaintiff in an accident occurring February 15, 1957, while in the employ of defendant, C. T. King, handling poles and piling in a railroad yard at Eros, Louisiana. Made defendants are King and the American Creosote Works, Inc., as well as the latter’s compensation insurance carrier, Liberty Mutual Insurance Company.
Plaintiff’s claim against the two latter defendants is predicated upon the contention that the American Creosote Works, Inc., *828 was a principal in the work undertaken and performed by King. The position of the defendants is that the American Creosote Works, Inc., was a mere purchaser of the forest products produced by King.
After trial the court concluded that plaintiff received the aforesaid accidental injuries in the performance of his duties and in the course and scope of his employment with King and that, as a result thereof, he was permanently and totally disabled and incapacitated within the purview and meaning of the Workmen’s Compensation Statute, LSA-R.S. 23 :1021 et seq., and accordingly awarded him compensation as against C. T. King. The court further concluded, however, that the relationship between King and the American Creosote Works, Inc., was that of vendor and vendee and, therefore, rejected plaintiff’s demands as against that defendant and its insurer.
Although orders of appeal were granted to King, he never perfected the appeal. Therefore, the issues between plaintiff and King are no longer at issue or before the court. Plaintiff, however, appealed from that portion of the judgment rejecting his demands as to the American Creosote Works, Inc., and the Liberty Mutual Insurance Company.
The principal issue for determination concerns the relationship between King and the American Creosote Works, Inc. If such relationship is as contended by plaintiff, that is, one of principal and contractor, the principal is liable to plaintiff for compensation. LSA-R.S. 23:1061. On the other hand, if such relationship is one of vendor and vendee, no such liability exists on the part of the vendee of the products purchased from the vendor nor on the part of the vendee’s compensation insurer. Smith v. Crossett Lumber Co., La.App., 72 So.2d 895; Carpenter v. Madden, La.App., 90 So.2d 508.
The pertinent and material facts are uncontroverted. C. T. King for many years has engaged in the timber business, producing and selling forest products. Considerable of his products have been sold to the American Creosote Works, Inc., the business of which is confined to the purchase of such products and their treatment with preservatives, primarily creosote, in its plant at Winnfield, Louisiana; otherwise, it is not engaged in the business of producing forest products.
The record further establishes that at the time plaintiff was injured King was producing poles, piling, pulpwood and saw logs from two tracts of timber, one of which was acquired by him from Louisiana State University and Agricultural and Mechanical College and the other from one D. R. Richardson. The bulk of these operations consisted of the production of poles and piling, eventually sold to and acquired by the American Creosote Works, Inc. The saw logs and pulpwood were sold by King to other parties. In the production of the forest products from these tracts, King’s operations were primarily, if not entirely, financed by the American Creosote Works,. Inc. Funds were advanced for the purchase of the timber from the first enumerated of these tracts. The loan or advance was secured by King’s mortgage on the timber purchased. As to the second of these tracts of timber, King executed his special mortgage and vendor’s lien note to-one D. R. Richardson, from whom he made the purchase. Richardson negotiated and transferred this note to the American Creosote Works, Inc. Further, during the course of operations the American Creosote Works, Inc., when necessary, made advances or loans to King for his pay rolls and other incidental expenses. For the poles and piling delivered to the American Creosote Works, Inc., King was paid the prevailing market price as paid to all other producers who were selling forest products to that vendee. Prices, however, varied, dependent upon the place of delivery, whether at the vendee’s plant, on railroad cars at shipping points, or alongside roads to be there loaded on trucks for transportation to the vendee’s plant. But by whatever manner or method when delivery was made, a representative of the *829 American Creosote Works, Inc., made an inspection of the products and stamped each piece of material with its mark of ownership.
At the time plaintiff was allegedly injured, he and a fellow employee were engaged in handling piling produced from the above tracts on the railroad yard in preparation of loading on railroad cars for shipment to the creosoting plant.
The record amply supports the conclusion reached by the trial court, in which we concur, that the relationship between King and American Creosote Works, Inc., was, as contended by defendants, one of vendor and vendee. The facts that the American Creosote Works, Inc., provided the funds for the purchase of the timber by King and advanced funds for his pay rolls and other operations and cruised and estimated the timber prior to its purchase to determine the advisability of advancing the purchase price, are insufficient to change or alter the character of the relationship, particularly in view of the fact there is no showing of any right to supervision or its exercise by the American Creosote Works, Inc., over the manner or method of King’s operations or the work performed by his employees. Nor can it be said that the furnishing of specifications of products or materials it was in the market to purchase constitutes an exercise of supervision.
We are convinced from our review of the record there is not only no manifest error in the conclusions reached by the trial court as to the relationship existing between these parties but that his conclusions find adequate support in the record and are clearly correct. The necessity of giving consideration to the other defenses made, particularly as to plaintiff’s disability, is obviated by the determination of the question of liability adversely to plaintiff’s contention.
Accordingly, the judgment appealed should be, and it is hereby, affirmed at plaintiff-appellant’s cost.
Affirmed.